1
2
3
4
5

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:13-cr-00376-JAD-GWF |
| | ) |
| vs. | ) **FINDINGS &** |
| | ) **RECOMMENDATIONS** |
| JOHNNIE RAMON HARRIS, | ) |
| | ) **Motion to Suppress (#71)** |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court on Defendant Johnnie Ramon Harris's Motion to Suppress Evidence and Request for Hearing Pursuant to *Franks v. Delaware* (#71), filed on August 24, 2015. The Government filed its Response (#73) on August 31, 2015, and the Defendant filed his Reply (#76) on September 4, 2015.  The Court conducted an evidentiary hearing in this matter on November 2, 2015.

## BACKGROUND

The indictment in this case charges Defendant Johnnie Ramon Harris with conspiracy to distribute controlled substances in violation of 21 U.S. §§ 841(a)(1)(C) and 846; possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and money laundering conspiracy in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h). *Indictment (#9)*.

For purposes of background only, the statement of probable cause in the criminal complaint in this case shows that beginning in December 2012, United States Postal Inspector Daniel J. Carbonetti reviewed video surveillance of the lobby and parking lot of the Joe C. Brown Postal Facility in Las Vegas, Nevada, in which an individual later identified as Defendant Johnnie Ramon

Harris was seen mailing express mail parcels from the postal facility to Memphis, Tennessee on a weekly basis. *Complaint (#1), pg. 3*, ¶¶ 5-6.  In February 2013, while conducting surveillance at the Joe C. Brown Postal Facility, Inspector Carbonetti observed Defendant Harris approach the counter and mail a parcel.  A search warrant was obtained to search the parcel which resulted in the discovery of 1,065.5 pills consisting of Hydrocodone, Oxycodone and Alprazolam. *Id., pg. 4*, ¶ 7. In March 2013, Officer Carbonetti obtained a warrant to install a tracking device on the motor vehicle operated by Defendant Harris which revealed that he frequently traveled from his residence to the Joe C. Brown Postal Facility. *Id.*, ¶ 8.  Thereafter, in May, June and August 2013, Inspector Carbonetti obtained three additional warrants to search express mail parcels mailed by Defendant Harris all of which resulted in the discovery of illegal controlled substances. *Id., pgs. 4-5*, ¶¶ 9-11. The complaint also stated that a review of Defendant Harris's bank account records from the period between October 2011 and December 2012 showed substantial cash deposits into the accounts in Tennessee, and substantial withdrawals from the accounts in Nevada which the Government alleged was consistent with the laundering of proceeds from narcotics trafficking. *Complaint (#1), pgs. 5-6*, ¶¶ 12-13.

Defendant Harris challenges the validity of the initial search warrant obtained by Inspector Carbonetti on February 7, 2013.  Because the results of that search warrant were allegedly the basis for the issuance of the tracking warrant in March 2013 and search warrants in May, June and August, 2013, Defendant argues that all of the evidence obtained from these warrants should be suppressed.

**Affidavit in Support of the February 7, 2013 Search Warrant.**

On February 7, 2013, the Government applied to United States Magistrate Judge C.W. Hoffman, Jr. for the issuance of a warrant to search a United States Postal Service (USPS) express mail parcel. *Motion to Suppress (#71), Exhibit A, Search and Seizure Warrant, Return, and Affidavit.*  In the affidavit in support of the search warrant, Inspector Carbonetti stated that he was employed as a United States Postal Inspector and was assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail.  He further stated that he had been employed by the United States Postal Inspection Service

(USPIS) for over one year and prior to that was a special agent with the United States Secret Service for 12 years.  Inspector Carbonetti stated that as part of his duties as a Postal Inspector, he investigates incidents where the United States mail system is used to transport "non-mailable matter," including illegal controlled substances. *Affidavit, pgs. 1-2*, ¶ 1.

Inspector Carbonetti stated that the parcel for which the search warrant was sought was believed to contain controlled substances or proceeds from the sale of controlled substances.  He described the parcel as a USPS Express Mail Parcel addressed to Mrs. Lisa Pain, 4028 Trevathan, Memphis, TN with a return address of Charles Pain, 1612 Sahara, Las Vegas, NV 89169.  The parcel weighed approximately 4 pounds, 5.4 ounces, and was described as a white Express Mail Envelope, measuring approximately 12" X 9" X 2", bearing a handwritten Express Mail Label.  The parcel was affixed with $19.95 in postage, was postmarked February 5, 2013 and was mailed from Las Vegas, NV 89199. *Affidavit, pg. 2*, ¶ 2.

Inspector Carbonetti's affidavit further stated:

> 3.  Experience and drug trafficking intelligence information gathered by the USPIS have demonstrated that the U.S. Postal Service Express Mail and Priority Mail are frequently utilized by drug traffickers for shipping controlled substances or proceeds/payments.  Use of Express Mail and Priority Mail are favored because of the speed (Express Mail - overnight; Priority Mail - two day delivery), reliability, free telephone and Internet package tracking service, as well as the perceived minimal chance of detection.  Express Mail and Priority Mail were originally intended for urgent, business to business, correspondence.  Intelligence from prior packages, which were found to contain controlled substances or proceeds/payments, has indicated that these labels are usually from an individual to an individual.  Express Mail and Priority Mail are seldom used for individual to individual correspondence.  I also know that drug traffickers prefer delivery services such as Express Mail and Priority Mail because of their expedited service.
>
> 4.  In an effort to combat the flow of controlled substances through the overnight delivery services, interdiction programs have been established in cities throughout the United States by the USPIS.  These cities have been identified as known sources of controlled substances.  The USPIS conducted an analysis of prior packages mailed through overnight delivery and two day delivery services, which were found to contain controlled substances or the proceeds/payments of controlled substance sales.  The analysis of prior packages, which were found to contain controlled substances or the proceeds/payments, indicated that these labels are usually from an individual to an individual.  In the few cases when overnight delivery packages containing controlled substances or the proceeds/payments

3

have displayed a business or company name, it has usually proven to be a fictitious business or company. Additionally, this analysis has established a series of characteristics which, when found in combination of two or more, have shown a high probability that the package will contain a controlled substance or the proceeds of controlled substance sales. Information collected by the USPIS has demonstrated that the presence of these characteristics is significant for delivery services, to include U.S. Postal Service Express Mail and Priority Mail, Federal Express, and United Parcel Service. This profile includes the following characteristics: package mailed from or addressed to a narcotic source city; package has a fictitious return address; package addressee name is unknown at destination address; package sender name is unknown at return address; package has address information that is handwritten; package is mailed from a Commercial Mail Receiving Agency (CMRA); package is addressed to residential areas; package is addressed from an individual to an individual; packages are wrapped in brown paper and/or heavily taped; and the ZIP Code from where the package is mailed is different than the ZIP Code used in the return address.

5. Articles found to bear the characteristics described above are further scrutinized by inspectors. Address verifications are conducted and the return addresses listed on the articles are often either fictitious or postal personnel familiar with the addresses are not familiar with the listed sender name(s). Based on my training and experience, I know drug traffickers will often use fictitious names or incomplete names and/or addresses in an attempt to conceal their identity from law enforcement. It has been my experience in those instances where the article contains a "valid" return address, it is an attempt to lend a legitimate appearance to the article. In addition to address verifications, the articles are subject to trained narcotic-detecting canine examination. However, drug traffickers frequently mask the drugs they are sending to evade detection by law enforcement K-9. Drug traffickers will often, but not always, use heat sealing to secure their product from omitting a scent.

*Affidavit, pgs. 2-3, ¶¶ 3-5.*

Inspector Carbonetti stated that on February 5, 2013, he was conducting surveillance at the James C. Brown Post Office[1] when he witnessed Defendant Harris enter the Post Office and mail the subject parcel. Inspector Carbonetti stated that Defendant Harris had conducted over 25 mailings of Express Packages to Memphis, Tennessee; that he always used a fictitious name and address for the sender information and used a fictitious name and good address for the recipient information. Inspector Carbonetti retrieved the subject parcel and observed several of the characteristics mentioned in paragraphs 4 and 5 of the affidavit. Based on these characteristics, he

---

[1] The facility is elsewhere identified as the **Joe** C. Brown Post Office. (Emphasis added).

4

1   detained the parcel for further examination.  *Affidavit, pg. 4*, ¶ 6.

2       Inspector Carbonetti stated that on February 5, 2013, he received grand jury subpoena results

3   from Cox Communications regarding the IP addresses that tracked the Express Mail packages

4   mailed by Defendant Harris.  The information received from Cox showed that IP Address

5   70.170.8.248 was registered to Kevin Williams with an address in Las Vegas, Nevada.  An NCIC

6   check on Williams revealed that he had been arrested twenty times since 1989, and that seven of his

7   arrests were for possessing or selling a controlled substance.  Records indicated that both Williams

8   and Defendant Harris were originally from Tennessee. *Id., pg. 4*, ¶¶ 7-8.

9       Inspector Carbonetti stated that on February 6, 2013, he queried the return address

10  information of Charles Pain, 1612 Sahara, Las Vegas, NV 89169 in Accurint and determined that

11  the name and address were fictitious.  On February 6, 2013, he also queried the recipient address

12  information of Mrs. Lisa Pain, 4028 Trevathan, Memphis, TN 38109 in Accurint.  He found that the

13  name was fictitious, but the address was a valid address. *Id., pg. 5*, ¶¶ 9-10.

14      Based on the information contained in Inspector Carbonetti's affidavit, Magistrate Judge

15  Hoffman issued a warrant to search the subject parcel for controlled substances and/or proceeds

16  from illegal drug trafficking. *Motion (#71), Exhibit A, Search and Seizure Warrant.*  According to

17  the search warrant return, the package contained pills consisting of Hydrocodone, Alprazolam and

18  Oxycodone. *Id.*

19                                **DISCUSSION**

20      Defendant Harris argues that Inspector Carbonetti misled the magistrate judge by stating in

21  his affidavit that the parcel exhibited several factors indicating an increased likelihood that it

22  contained contraband.  Defendant requests that the Court conduct an evidentiary hearing pursuant to

23  *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978) to determine whether Inspector Carbonetti

24  made intentional or reckless misrepresentations or omissions of material fact.  The Government

25  argues that Defendant has failed to make a sufficient threshold showing to justify a *Franks* hearing.

26  It further argues that the affidavit provided probable cause to support the issuance of the warrant, or,

27  in the alternative, that the search and seizure should be upheld under the good faith exception to the

28  exclusionary rule.  The Government also argues that Defendant Harris did not have a reasonable

5

expectation of privacy in the parcel to challenge the legality of the search warrant and that he

abandoned any interest or right in the parcel prior to the Government's search.  The Court will first

address the Government's "standing" and abandonment arguments.

> **1.     Whether Defendant had a reasonable expectation of privacy in the parcel or abandoned any such interest.**

A defendant bears the burden of establishing that he has a legitimate expectation of privacy

in the items seized or the areas searched.  *United States v. Lopez-Cruz*, 730 F.3d 803, 807-808 (9th

Cir. 2014).  The reasonable expectation of privacy turns on whether the person had an actual,

subjective expectation of privacy and whether the individual's subjective expectation of privacy is

one that society is prepared to recognize as reasonable.  *Id.*, at 807, citing *Katz v. United States*, 389

U.S. 347, 361, 88 S.Ct. 507 (1967).  A defendant may abandon his expectation of privacy in

property.  Abandonment is a question of intent which is determined by the totality of the

circumstances.  The inquiry focuses on whether, through words, acts or other objective indications,

a person had relinquished a reasonable expectation of privacy in the property at the time of the

search or seizure.  *Id.*, at 808.

The Government relies on *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988),

*United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984), and *United States v. Shrader*, 2010 WL

2595175, *2 (S.D.W.Va. 2010) in arguing that Defendant did not have a reasonable expectation of

privacy in the subject Express Mail parcel.  In *Koenig*, a parcel was sent to Ms. Koenig through

Federal Express.  Prior to delivery, law enforcement officers determined that the package contained

cocaine.  They made a controlled delivery of the package to Ms. Koenig's residence.  A warrant was

then obtained to search the residence which resulted in the seizure of the package.  Graf arrived at

the residence during the search and was taken into custody and subsequently charged with

conspiracy to distribute controlled substances.  In denying Graf's motion to suppress, the court

stated:

> Because Graf was neither the sender nor the addressee of the package
> and thus had no privacy interest in it, he therefore has no standing to
> make the request.  We need not decide whether a privacy interest
> could be recognized given proof of an ownership interest in the
> contents of the parcel and a showing of the ability to control the parcel
> once delivered.  A wife, for example, might have a privacy interest in

> an envelope containing a life insurance policy covering both husband and wife that was sent to the household addressed to the husband. Graf fails to qualify for that sort of standing, however, because he fails to establish even a limited privacy interest in the package.

*Koenig*, 856 F.2d at 846.

In *United States v. Givens*, Mr. and Mrs. Givens purchased cocaine from Dancy who sent it by airline concealed in a package addressed to Midwest Corporation, attention Debbie Starkes. Starkes, an employee of Midwest Corporation, was also a co-conspirator with the Givens and Dancy. A division of Midwest Corporation was listed as the sender on the package. Mrs. Givens picked up the package containing the cocaine at which time she was arrested. In denying the Givens' motion to suppress, the court held that they did not have a reasonable expectation of privacy in the contents of a package which was not addressed to them or to some entity, real or fictitious, which was their alter ego. The package was instead addressed to actual third parties–Midwest Corporation and/or Debbie Starkes. 733 F.2d at 341. The court equated defendant's assertion of a privacy interest in the cocaine, to a party claiming a right of privacy to articles located in plain view in another person's automobile. The court rejected the defendants' argument that they had an expectation of privacy in the contents of the package because they were its intended recipients. *Id.* at 342.

It is not clear from the district court decision in *United States v. Shrader* on what basis the defendant claimed a violation of the Fourth Amendment. The Government relies on a passage from that decision which cites several district court decisions, as well as *United States v. Daniel,* 982 F.2d 146, 149 (5th Cir.1993), in holding that there is no expectation of privacy when a defendant has not disclosed his or her identity on the face of the mailing, or addresses the mailing to a false name. 2010 WL 2595175, at *1.

In *United States v. Daniel*, 982 F.2d 146 (5th Cir. 1993), a package containing methamphetamine was shipped by airline to a recipient identified as "Lynn Neal." Law enforcement officers obtained a warrant to search the package, removed the drugs, and then made a controlled delivery of the package to the recipient address were it was received by defendant. In holding that the defendant did not have "standing" to challenge the search, the court stated:

7

> At trial, Daniel's theory of defense was that Ricky Lynn Daniel and Lynn Neal were different persons. If we accept this dubious contention, then Daniel has no "standing" to raise a Fourth Amendment challenge to the Government's conduct with respect to a package addressed to someone else. *See United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988).  Furthermore, even if we accept the Government's assertion that "Lynn Neal" was Daniel's alias, we still question whether Daniel would have Fourth Amendment "standing" to assert the claim, particularly when the use of that alias was obviously part of his criminal scheme.  *See United States v. Lewis*, 738 F.2d 916, 919-20 n. 2 (8th Cir. 1984).

982 F.2d at 149.

In *United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003), however, the majority opinion rejected the argument that a sender and recipient lose any expectation of privacy by sending and receiving mail under false names.  The court stated that "[t]here is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable." *Id.* at 459.  The court cited various hypothetical examples of individuals who might lawfully wish to avoid using their real names in sending or receiving articles in the mail. *Id.*, at 458.  In rejecting the concurring opinion that neither the sender or recipient had a reasonable expectation of privacy, the court stated:

> There are two possible ways to interpret the concurrence. First, because some people employ an alias and use the mail illegally, everyone with a legitimate reason to remain anonymous should lose their expectation of privacy in the post. Alternatively, only people using an alias for legitimate reasons may retain an expectation of privacy in their mailings while those who employ an alias for illicit purposes may not. Both constructions turn the Fourth Amendment on its head.

> The first approach assumes that criminals can forfeit the privacy interests of all persons by using a confidential domain for nefarious ends.  Any creative means that a person engaging in illegal activity devises to conceal that fact will lead to the end of privacy for persons engaged in wholly legitimate confidential activities.  For example, if persons engaged in illegal drug sales often use hotel rooms for their transactions, or commonly employ cellular telephones to communicate the terms of their deals, then under the concurrence's analysis no one would retain a legitimate expectation of privacy in the use of hotel rooms or cellular telephones.

8

Under the second approach, only criminals forfeit their Fourth Amendment rights. The illegal contents of the package serve as an after-the-fact justification for a search. The concurrence concludes that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine sent through the United States mail by a sender using a fictitious name for himself and his addressee. Of course, the government did not know the package contained crack cocaine until it opened and inspected the box. We may not justify the search after the fact, once we know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant's activities, whether innocent or criminal. *United States v. Fields,* 113 F.3d 313, 321 (2d Cir.1997), *cert. denied,* 522 U.S. 976, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997). If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes. Presumably if no narcotics are found (or, as the concurrence speculates, no pipe bombs are found), the owner of the home would be able to bring a civil lawsuit for nominal damages for the technical violation of privacy rights. The Fourth Amendment requires more than this.

*Pitts*, 322 F.3d at 458-459.

The court stated, however, that "[a] person using this means of maintaining privacy runs the risk that if the mail is undeliverable, as occurred here, it might become irretrievable." *Id.* at 459. Defendant Pitts had sent a package containing illegal drugs by Express Mail Service addressed to a fictitious "James Reed, Jr." at an address in Moline, Illinois. The listed sender was a fictitious "James Reed, Sr." with an address in Sacramento, California. The package was intended for delivery to the co-defendant, Alexander. When contacted by a postal inspector, however, Alexander disavowed any knowledge of James Reed, Jr., denied that he was expecting a package and refused to accept its delivery. The court held that Alexander abandoned the parcel when he expressly disavowed knowledge of it and refused to accept it. It held that Pitts abandoned the parcel when he launched it into the stream of mail without any legitimate way of retrieving it. The court stated that "[b]ecause he sent it via Express Mail and used a false return address, he acknowledges he would have been required to produce a copy of the mailing label and proper identification in the name of the sender in order to retrieve the package. His counsel conceded at oral argument that Pitts did not have proper identification in the name of James Reed, Sr. Because Pitts could not retrieve the package and Alexander refused to accept it, the parcel was abandoned." *Id.*, 322 F.3d at 456-457.

In *People v. Periera*, 150 Cal.App.4th 1106, 58 Cal.Rptr.3d 847 (2007), the court adopted the reasoning of *Pitts* with respect to whether a sender or recipient can have a reasonable expectation of privacy in an express mail package that lists them by fictitious names.  The court found that the sender in that case did not abandon his privacy interest in the package.  *Id.*, 150 Cal.App.4th at 1113, 58 Cal.Rptr.3d at 852-53.  The court noted that there was no evidence that the name or address of the recipient to whom the package was addressed was fictitious.  "Morever, defendant obtained a tracking number for the package, which permitted him to retain significant control over it while in transit.  Defendant telephoned Ponce [the shipper] four to five times regarding the whereabouts of the package, objectively demonstrating his continued interest in it.  And the fact that defendant gave Ponce his telephone number and that Ponce was able to return his calls further indicates that defendant did not remain completely anonymous."  *Id.*, 150 Cal.App.4th at 1113, 58 Cal.Rptr.3d at 853.  The court also stated that it was unclear from the record what objective facts were known to the officer who searched the package that would have led him to conclude the package was abandoned.  *Id.*, 150 Cal.App.4th at 1114, 58 Cal.Rptr.3d at 853.

This Court believes that the reasoning of the majority opinion in *United States v. Pitts,* that a person does not lose his expectation of privacy merely by sending or receiving an article of mail under a fictitious name, represents the better view.  Such conduct, however, is a factor in determining whether the anonymous sender or recipient has abandoned his expectation of privacy in the parcel.

 Inspector Carbonetti stated that he observed Defendant Harris enter the post office and mail the subject parcel.  He was aware from previous surveillance that Defendant had conducted over 25 mailings of express mail packages to Memphis, Tennessee, and that Harris always used a fictitious name and address for the sender and a fictitious name for the recipient.  *Affidavit, pg. 4*, ¶ 6.  The subject parcel contained fictitious information regarding the sender and a fictitious name for the recipient.  *Id., pg. 5*, ¶¶ 9-10.  Inspector Carbonetti also stated that packages recently mailed by Defendant Harris were being tracked online via an IP address that was registered to a Kevin Williams.  *Id., pg. 4*, ¶ 7.  The Government does not state whether law enforcement officers attempted to make a controlled delivery of the subject parcel to the address in Memphis, Tennessee

10

1   and, if so, what happened.  Nor has the Government provided any information as to whether

2   Defendant Harris or any other person attempted to locate or retrieve the package when it did not

3   arrive at its intended location.  Based on the bare assertions made by the Government, the Court

4   cannot conclude that Defendant Harris abandoned any interest he may have had in the package.  On

5   the other hand, Defendant has not clearly claimed an ownership interest in the subject parcel or even

6   acknowledged that he mailed it.  If the outcome of this motion hinged on whether Defendant Harris

7   had an expectation of privacy in the subject parcel, the Court would conduct a follow-up evidentiary

8   hearing on the issue of abandonment.

9        **2.      Defendant's request for a *Franks* evidentiary hearing.**

10        A defendant is entitled to challenge the validity of a search warrant, if he makes a substantial

11   preliminary showing that (1) the affidavit in support of the warrant contains intentionally or

12   recklessly false statements and (2) the affidavit purged of its falsities would not be sufficient to

13   support a finding of probable cause.  *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d

14   667 (1978).  In determining whether a defendant is entitled to an evidentiary hearing with respect to

15   such a challenge, *Franks* states:

16        There is, of course, a presumption of validity with respect to the affidavit
         supporting the search warrant.  To mandate an evidentiary hearing, the
17       challenger's attack must be more than conclusory and must be supported by
         more than a mere desire to cross-examine.  There must be allegations of
18       deliberate falsehood or of reckless disregard for the truth, and those
         allegations must be accompanied by an offer of proof.  They should point out
19       specifically the portion of the warrant affidavit that is claimed to be false; and
         they should be accompanied by a statement of supporting reasons.  Affidavits
20       or sworn or otherwise reliable statements of witnesses should be furnished or
         their absence satisfactorily explained.  Allegations of negligence or innocent
21       mistake are insufficient.

22    438 U.S. at 171.

23        If the defendant makes a substantial showing that the affidavit contains intentionally or

24   recklessly false statements, "and if, when the material that is the subject of the alleged falsity is set

25   to one side, there remains sufficient content in the warrant affidavit to support a finding of probable

26   cause, no hearing is required."  *Franks*, 438 U.S. at 171-172.  On the other hand, if the remaining

27   content is insufficient to support probable cause, then the defendant is entitled to an evidentiary

28   . . .

11

hearing.[2]  *Id.*  At the hearing, the defendant has the burden of proof by a preponderance of the evidence to establish that the false statements were deliberately made or were made with a reckless disregard for the truth.  *United States v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir. 1992).

Intentional or reckless omissions may also provide grounds for a *Franks* hearing.  *United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007) states in this regard:

> "A search warrant, to be valid, must be supported by an affidavit establishing probable cause."  *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).  In *Stanert*, we applied the rationale of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading."  *Stanert*, 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw.  To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.")  In addition, the defendant must show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause existed" to search defendant's residence.  *Id.* at 782.

In determining whether a defendant is entitled to an evidentiary hearing, "[c]lear proof of deliberate or reckless omission is not required.  (citation omitted).  Such proof is reserved for the evidentiary hearing."  *Stanert*,  762 F.2d at 781.  The court in *Stanert* found that the defendant made a substantial preliminary showing that the affidavit omitted material information regarding each of the key facts relied on by the government to support probable cause and that the nature of the omissions suggested that they were made intentionally or at least recklessly.

Defendant argues that a *Franks* hearing is warranted because Inspector Carbonetti's affidavit "pointed to unspecified 'intelligence information' that supposedly provided a list of factors pointing to a heightened expectation of drug contraband within a particular parcel."  *Motion (#71), pg. 2.*  The affidavit stated that "[e]xperience and drug trafficking intelligence information gathered by

---

[2] United States v. Dicesare, 765 F.2d 890, 894-895 (9th Cir. 1985) summarizes these requirements as follows:  (1) The defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

1    USPIS have demonstrated that the U.S. Postal Service Express Mail and Priority Mail are frequently

2    utilized by drug traffickers for shipping controlled substances or proceeds/payments." *Affidavit, pg.*

3    *2, lines 14-16*.  The affidavit stated that "[i]n an effort to combat the flow of controlled substances

4    through the overnight delivery services, interdiction programs have been established in cities

5    throughout the United States by the USPIS.  These cities have been identified as known sources of

6    controlled substances.  The USPIS conducted an analysis of prior packages mailed through

7    overnight delivery and two day delivery services, which were found to contain controlled substances

8    or proceeds/payments of controlled substance sales." *Id., pg. 3, lines 1-6.*  Inspector Carbonetti

9    further testified that "[b]ased on my training and experience, I know drug traffickers will often use

10   fictitious names or incomplete names and/or addresses in an attempt to conceal their identity from

11   law enforcement." *Id., pg. 3, line 25-pg. 4, line 1.*

12       In determining whether probable cause exists, the court is entitled to rely on the training and

13   experience of law enforcement officers. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995);

14   *United States v. Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986); *United States v. Fouche*, 776

15   F.2d 1398, 1403 (9th Cir. 1985).  The affiant may also rely on the knowledge and experience of

16   other law enforcement officers to support a finding of probable cause. *United States v. Butler*, 74

17   F.3d 916, 920 (9th Cir. 1996).  In *United States v. Hernandez*, 313 F.3d 1206, 1211 (9th Cir. 2002),

18   the court recognized the legitimacy of the USPIS's drug package profile in providing reasonable

19   suspicion to believe that a package contains controlled substances or the proceeds/payments from

20   the sale of such substances.  The court stated that its confidence in the reasonableness of the postal

21   inspector's suspicions was increased because the factors cited by him were listed as elements in the

22   drug package profile.  The court also noted that the source of the inspector's knowledge was the

23   formal instruction he had received during a period of specialized training and his allusion to

24   discussions he had had with other inspectors about profile characteristics. *Id.*, at 1211.  The court

25   further stated:

26             Other courts have described in greater detail the postal services's drug
             package profile.  In *United States v. Hill*, 701 F.Supp. 1522, 1528
27           (D.Kan. 1988), the court explained, "[t]he Drug Package Profile does
             not contain completely arbitrary criteria.  Instead, the profile was
28           developed at a national level and was based on information gleaned

from national investigations of narcotics mailings." *United States v. Lux*, 905 F.2d 1379 (10th Cir. 1990), lists seven characteristics that were included in the profile at that time. Several of the factors mentioned in *Lux* support the reasonableness of Phillip's suspicion: a package taped to close or seal all openings, handwritten or printed labels, and fictitious return address. *Id.*, at 1380. Also, *United States v. Cantrall*, 762 F.Supp. 875, 879 (D.Kan. 1991), mentions that inspectors pay attention to a packages's city of origin. Here, the fact that the package had been mailed from California, a known drug source state, heightened Phillips' concern.

313 F.3d at 1211.

Inspector Carbonetti's affidavit referenced his own training and experience, and, in particular, the experience and drug trafficking intelligence information gathered by USPIS in identifying express mail packages that contain controlled substances or the proceeds from the sale of controlled substances. The affidavit can be fairly criticized for not providing a more detailed explanation of the basis for those findings. This criticism does not, however, provide grounds for a *Franks* hearing. Inspector Carbonetti's affidavit adequately states that the profile of suspicious packages was developed by the USPIS and that he was relying on that profile with respect to the subject package. Defendant has made no showing that the affidavit contains any intentionally or recklessly false statements regarding the characteristics of express mail packages that contain controlled substances. Nor has Defendant shown that the affidavit omitted any material facts about the drug package profile that would have negated a finding of reasonable suspicion or probable cause.

Defendant also argues that the Court should conduct a *Franks* hearing because the affidavit did not state that Las Vegas or Memphis are known source or destination cities for illegal controlled substances. The failure to include this information arguably detracts from a finding of probable cause to issue the warrant. There is no basis to conclude, however, that the magistrate judge was misled by the failure to include such information in the affidavit. Moreover, Defendant has not provided any evidence that Las Vegas or Memphis are not, in fact, source or destination cities for illegal narcotics, such that the affidavit omits a material fact that would have negated a finding of probable cause.

. . .

14

During the hearing on this motion, Defendant's counsel also argued that a *Franks* hearing should be conducted with respect to Inspector Carbonetti's statements that the IP address used to track the packages mailed by Defendant was registered to Kevin Williams, who has prior arrests for possessing or selling controlled substances and who, like Defendant Harris, is originally from Tennessee. *See Affidavit, pg. 4*, ¶ 7. Defendant has offered nothing to suggest that this information was false or that Inspector Carbonetti omitted material information relating to the IP address or Mr. Williams. Defendant's sole basis for requesting a *Franks* hearing on these statements is his denial of any knowledge of Mr. Williams. Such a conclusory assertion is not sufficient to invoke the right to a *Franks* hearing.

> **3.  Whether the affidavit demonstrated probable cause for the issuance of the warrant, or whether the search and seizure should be upheld under the good faith exception to the exclusionary rule.**

Defendant's motion does not directly argue that Inspector Carbonetti's affidavit failed to set forth sufficient facts demonstrating probable cause for the issuance of the warrant. As the Government states in its response, however, an issue regarding probable cause might be inferred from Defendant's argument that the information in the affidavit misled the issuing magistrate judge. *Response (#73), pg. 10.*

Probable cause is a fluid concept which turns on the assessment of probabilities in particular factual contexts, not readily or even usefully reduced to a neat set of legal rules. *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006), citing *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) states that "probable cause means 'fair probability,' not certainty or even a preponderance of the evidence. . . . In short, a magistrate judge is only required to answer the 'commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place' before issuing a search warrant." *Id.*, at 1160. The issuing judge's determination of probable cause should also be paid great deference. *Id.*

Inspector Carbonetti's affidavit stated that the subject parcel had certain characteristics consistent with express mail parcels that have been identified as likely to contain illegal controlled substances or the proceeds from the sales of illegal controlled substances: (1) the parcel was

1  addressed from an individual to an individual; (2) the address information on the parcel was

2  handwritten; (2) the return address's Zip Code was different than the Zip Code from which the

3  parcel was mailed; (3), the name and address of the sender was fictitious and; (4) while the recipient

4  address was a valid address, the name of the recipient was fictitious.  In addition to these facts,

5  Inspector Carbonetti stated that he witnessed Defendant Harris mail the subject parcel at the post

6  office and that Defendant had previously conducted over 25 mailings of Express Packages to

7  Memphis, Tennessee, and had always used a fictitious name and address for the sender information,

8  and a fictitious name for the recipient.  *Affidavit, pg. 4*, ¶ 6.  Inspector Carbonetti also stated that

9  packages recently mailed by Defendant Harris were being tracked by an IP address registered to

10  another individual, Kevin Williams, who had been arrested twenty times since 1989, including

11  seven arrests for possessing or selling a controlled substance.

12         Although a reasonable argument could be made that facts set forth in the affidavit gave rise

13  to no more than a reasonable suspicion that the subject parcel contained illegal controlled

14  substances, the fact that Mr. Harris had previously mailed 25 packages with fictitious names and

15  addresses from the same post office, and that the packages were being tracked by an individual with

16  arrests for controlled substances violations, supports the magistrate judge's finding of probable

17  cause.  That finding is entitled to great deference.  Even if this Court were to conclude that the

18  affidavit fell short of providing probable cause, the good faith exception to the exclusionary rule

19  would require it to uphold the validity of the search and seizure.  Evidence obtained pursuant to an

20  invalid search warrant need not be suppressed, if the officers had an objectively reasonable basis for

21  relying on the validity of the warrant.  *United States v. Leon*, 468 U.S. 897, 922-23, 104 S.Ct. 3405,

22  3420 (1984), For the exception to apply, the affidavit must demonstrate at least a colorable

23  argument for probable cause.  *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011), quoting

24  *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).  Inspector Carbonetti's affidavit

25  provided at least a colorable argument for probable cause.  His reliance on the validity of the search

26  warrant was therefore objectively reasonable.

27  . . .

28  . . .

**CONCLUSION**

Defendant has failed to make a sufficient threshold showing for a *Franks* evidentiary hearing. Plaintiff has failed to show that the affidavit contained any false statements of material fact, or omitted any material facts which, if corrected, would result in a finding that probable cause did not exist for the issuance of the warrant.  For this reason, Defendant has also failed to make any showing that Inspector Carbonetti intentionally or recklessly made false statements of fact, or intentionally or recklessly omitted material facts.  The Court also concludes that the affidavit provided probable cause for the issuance of the search warrant, or, at minimum, provided a colorable argument in support of probable cause such that Inspector Carbonetti's reliance on the validity of the warrant was objectively reasonable.  Accordingly,

**RECOMMENDATION**

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Evidence and Request for Hearing Pursuant to *Franks v. Delaware* (#71) be **denied**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 17th day of November, 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

17